This case is about the propriety of maintaining a seal on judicial records that were part of a civil litigation. This court, this circuit, has not yet determined whether there is a First Amendment right to access to judicial records in civil cases. It's important for this court to recognize the First Amendment right to access because courts in this circuit daily make decisions about whether to seal records. Rarely do those decisions whether or not to seal come to this court for review. And in the absence of guidance about whether there's a First Amendment right to access, those courts won't know what test to apply. What language in the First Amendment do we turn to to do what you have just suggested? I mean, what's the language that's at issue here? Well, of course, the express language of the First Amendment says that Congress shall make no law abridging freedom of speech. However, that's been interpreted more broadly to appeal to other government entities, including the judicial branch. And that is why the U.S. Supreme Court has found a First Amendment right of access explicitly, definitely, to criminal proceedings and implicitly to civil proceedings. There's no express language in the First Amendment itself that suggests that the judicial branch has any obligation to follow the First Amendment. Or find that that language doesn't really apply to the situation. I mean, the Supreme Court has said that there is a First Amendment right of access to courts and to judicial records at a minimum in criminal proceedings. So that bridge has been crossed, interpreting the First Amendment to apply to the judicial branch and its records. So a criminal defendant has a First Amendment right to the prosecutor's discovery? No. A First Amendment right, just as in other contexts. A First Amendment is a qualified right. And what we're talking about are judicial records. A prosecutor's discovery, if it's not filed in a court case, does not become a judicial record. Just like discovery exchanged between parties. Part of the judicial records in my office might be a letter from me to Judge Loken saying, on my analysis of something that we're working on, you're saying that you can come in and look at my letter file and the First Amendment lets you do that? That would be a judicial record, wouldn't it? It would not. The judicial records, as interpreted by the Press Enterprise case and the Richmond newspapers, talk about documents that are filed in a court proceeding. And in this case, we're talking about documents that were filed in support of a motion for summary judgment. And those are types of testimonial documents that, if not for summary judgment, would be things aired in open court. So the First Amendment right of access would apply only to those types of judicial records that are traditionally open to the public. Go ahead. Finish your thought. I was going to say, the Press Enterprise test that you use to determine, once you've determined there's a First Amendment right of access to determine whether or not a record would be open, would look at history to see historically if a certain type of records were open. How does our decision in Zink help or hurt you? It seems to me that we've at least touched on this issue. I think Zink talked about whether there was a right to know a participant. I believe it was a pharmacist there in the execution process in Missouri. This is also involving the death penalty and also involving Missouri. But it's not about identifying an individual or that person's identity. It's about access to a record that's been filed with the court and, in fact, relied upon the court in its judgment. What about the analysis? It seemed to me that at least the court underwent a certain discussion of the very test that you've referred to on whether it's historically been something that has been open to the public. How does at least the discussion in Zink help or hurt what you're trying to promote here today? I think that it's the right test to discuss historically whether information has been available or not available. We're talking about a different kind of record. But we're talking about similar kind of information, aren't we? In some respects, it could be similar information. The record in Zink was a government record held in offices somewhere. The record here is one that has been filed with a district court and relied upon for a district court to make a decision, a judgment on the merits. The court said consistently. It was then dismissed as moot. Which was ultimately, after appeal, dismissed as moot, correct? Yeah. The decision that you're relying on is a non-event. Well, ironically. Yes. Ironically, I think is the best word for it. The courts have consistently, including the Supreme Court and this court, have consistently found that there's not a First Amendment right of access to all government records. And the records in Zink would be government records that had not been filed with a court. However, every circuit that has addressed it has found that there is a First Amendment right of access to judicial records. To what? Judicial papers? Judicial records. So records that are filed with the court. Now, there's some dispute about whether the Seventh Circuit, for instance, says discovery that is not filed with a court would not be subject to a First Amendment right of access. Other circuits say maybe it is. So everything in my office in Lincoln, Nebraska, is discernible under your theory, is that right? That is not correct. Only documents that are filed with a court of the type that are traditionally open to the public. Through the clerk of the court? Yes. So evidence and pleadings that are filed would be susceptible to a First Amendment right of access. So how can a document that was filed but was sealed and consistent with traditional principles governing that issue be subject to First Amendment trumping? The question is whether they're sealed consistent with the First Amendment and the common law right of access. We've been sealing and unsealing documents for decades, if not centuries. So there is a traditional inquiry that has never been related to the First Amendment for deciding whether sealing is appropriate. Right. So how does the First Amendment change that? It changes it. I would submit that the courts, in making these sealing decisions, should be considering the First Amendment right to access of the public. Traditionally, I don't believe that happens. Of course it does. It's always at the root of a sealing decision is that this is something we don't like to do. So when you go to history and tradition and then say you've got the First Amendment says you have to unseal this document that's been sealed in accordance with traditional principles, I don't know where you're coming from. Well, the traditional principles, the reason every circuit that has addressed this has found that there is a First Amendment right to access is that the public sometimes has interests different than the parties. And the parties often will agree that something should be sealed and a district court will go along with that. And the public has the right through the media or other interested individuals to intervene and challenge that sealing decision. And there could be two grounds for that. There's the common law right of access, which this court has recognized in IDT, but also a First Amendment right of access. And I think probably where it comes most into play is that under the First Amendment, you have to narrowly tailor any remedy. So if you are sealing a record, you should, under the First Amendment, if there's a right of access, seal only those portions that are absolutely necessary to be sealed. If you do take that analysis and you, assuming that the parties have agreed it's a judicial record, I guess getting back to the zinc, we've kind of gone through a balancing, like put aside that that wasn't a judicial record, but sort of whether or not the public has a right to that kind of information. Have we already done that analysis in zinc? You've done that analysis of whether or not the public has a right to the identity of a pharmacist who provides execution drugs. Is this a lot different, the identity of the individuals participating? Well, we're not trying to find the identity of the person participating whose name isn't even used. The district court has found it or at least concluded to the contrary. Well, the district court did, but I don't know where that came from. There was no hearing. I think it's fairly transparent myself, but anyway. Okay, but traditionally. So don't state as fact what I consider to be, that the district court found to be non-fact. Well, the only evidence in this case is an affidavit from my client stating the reason why these records are being sought. And if the district court or this court comes up with something else, that's not based on evidence. Well, in almost every criminal appeal I get, if there's a sentence, I get a packet of things where there's been interviews and so forth that have been submitted to the court in support of analysis of a sentence. And they come to me under seal. And you're saying that since your description, those are court records that anybody can come, and even if it contains some very intimate personal things that are of very little interest, those are the kind of court records. The First Amendment gives you a right to that, whether you come and get it or not. They don't give you a right to it. They give you a right to ask for the records to be unsealed. And then there would be a determination made whether or not any portion of that record or all of the record may be unsealed. And the right to intervene and ask for that is what the previous panel in this case found to exist. I would like to reserve the remainder of my time for rebuttal. Thank you. Mr. Goodwin. Good morning, and may it please the court. I'd like to begin by circling back to a question that you asked, Judge Logan, which is the historic tradition of access to this type of information. I think it's clear from this court's finding in Zink as well as this court's finding in N. Ray Lombardi and N. Ray Missouri Department of Corrections that there's not a history or a tradition of access to information that would reveal the identity of execution team members. And that's precisely what's at issue in this case. And, Judge Kelly, you picked up on what I think is outcome dispositive of the First Amendment question, which is this court's holding in Zink. In Zink, this court explained that the second, assuming that the First Amendment applied to that type of information, that there was not a significant positive benefit on the governmental process at question by revealing that information. That's the second part of the First Amendment test. And, in fact, that's what the district court found in this case, that revealing this information or unsealing these documents would likely frustrate the state's ability to carry out its governmental functions. Restate the second thing that you just said. Yes, Your Honor. The second prong of the First Amendment test is whether public access has a significant positive effect on the governmental function at issue. In this case, that's Missouri's ability to carry out its lawful criminal sentences. We seal business records, for instance, and other things like that, that would be unfair to the purveyor of them to be published. Well, that would fit in that category, but we have traditionally not permitted the breaching of that ceiling. That's right, Your Honor. So it's even a little more broadly than you state, right? I would agree. I would agree that that's accurate, Your Honor. And, Judge Kelly, another thing that you have picked up on, it would seem, from your questions to other counsel, is that the district court made the required fact findings for the First Amendment test in its orders. So this is not the appropriate case, in our view, to decide whether or not the First Amendment applies to these sorts of civil records, because in this case it doesn't matter. The district court made the appropriate fact finding. Well, and the district court also went to the common law. Do you think that that's a different test or a different balancing? Do we have to look at different interests? They are two different tests. I think that those tests sometimes, in this case, for instance, deal with similar balancing or similar issues. The First Amendment test is not a balancing test. It's just a two-step test. The common law test is a balancing test where you identify the intervener or the public's interest in the records and weigh that against the proper interest in keeping the documents sealed. In this case, the proper interest in keeping the documents sealed is the state of Missouri's interest in continuing to carry out its lawful sentences. I don't know how you can decide the second prong without doing some balancing. Of the First Amendment test? I mean, I think this notion that they're different because the words on a page are different is typical lawyering. Judge Locke, your point is well taken that there is some parsing, perhaps extra parsing, that has been done in these other cases. But to the extent that there is some balancing, that fits in with the tradition of other First Amendment analysis where you have to determine whether or not the government's compelling interest or, in this case, the language's higher interest, although I think those are essentially the same thing, outweighs the other issues in the case. Here, the district court did that kind of analysis, did all the fact-finding necessary under either the First Amendment or common law test. What did the district court find was the interest of the public? There seems to be some confusion initially as to whether you were looking at the interest of the public or interest of this particular intervener. But assuming it's the public, what facts do we have in here that were actually balanced against the state's interest in the common law test? I think the only facts that were presented below, in terms of the public's interest, is just a generalized interest in the public's general supervisory authority over its government, which is a very broad, nebulous, and, again, general degree of interest. That's certainly what Mr. Flint put in his affidavit and made in his arguments to the district court. But when you weigh that against the outcome of revealing this type of information, the district court found, as this court has found in Zank and other cases, that the government's, that Missouri's, interest in carrying out its lawful sentences outweighs the public's generalized interest in supervision. So your interpretation of the record is that it was just a generalized assertion on the part of the intervener to say it's just we're overlooking our government generally, nothing specific as to this type of record that they were seeking? On behalf of the public, yes, that's my understanding. Now, Mr. Flint has proposed that he has some specific interests, and the district court took those into consideration, which this court has authorized district courts to do in the Webster Grove case and other cases where the district, or where this court has looked at what the interest of the intervener is in addition to the generalized interest of the public. From what source may the facts be gleaned to do this balancing? This court, I think, in Zank has demonstrated or held, rather, that it's either facts in the records or citations to authority. So in Zank, this court said that the petitioners there established neither facts in the record nor citations to authority that would demonstrate that those prisoners had a First Amendment right of, or a First Amendment right to have access to the identity of those team members. Here, there's neither facts in the record demonstrating a history of access or that public access has a significant positive role, and there are not citations to those cases either because in this context there are no cases. And that may not be true for every case, but in this case, or in this type of case, there are no citations that would really support Mr. Flint's position. Would that include facts of which a judge could take judicial notice, for instance, and the sources of judicial notice? In other words, that a disclosure of a name has led, according to newspaper reports, to vilification or loss of business or marching in front of their business. So would that be facts the judge could put into this balancing test? Absolutely, Your Honor. And that sort of idea, I think, is reflected in a couple of other cases in this context. I think it was the Supreme Court of Arkansas on a similar issue that said, you know, it's a matter of public record that death penalty opponents are seeking to uncover identities in order to exert public pressure or go to threats and harassment to stop the supply of chemicals or personnel. In the United States Supreme Court Glossop case during oral argument, Justice Alito referred to it as a guerrilla war against the death penalty. And I think that sort of information is certainly something that the court, that a district court, could take judicial notice of. And I think a reading of- How about an appellate court? I agree. I think an appellate court could as well. And I think a reading of the district court's opinion in this case, you know, where the district court held that the likely result of unsealing these documents would be a revelation of the identities and that revealing the identities presents a substantial risk, that those team members would be subject to harassment and evasion of privacy, and that that outcome would compromise Missouri's ability to carry out its functions, I think comes strongly from the court's ability to take that sort of judicial notice of matters of public concern. So, again, I don't think this is the right case to decide the question of whether there's a First Amendment right of access to these documents because of the fact-finding that the district court did in this case, and just because this case is atypical, given the particular type of subject matter. And that's been a theme of the discussion so far is what level of generality versus what level of specificity is required for the analysis in these types of cases. And I think a high level of specificity is needed. So one issue that you had touched on, Judge Beam, is whether under the First Amendment, every record in your chambers would be open for public review. Although we haven't discussed it yet, I think there's a concern, potentially, that if there's a First Amendment right of access to all documents related to a case, bench memos or bench memorandum or research by clerks could be subject to motions to unseal. In the district court, there was a vigorous briefing on whether or not records were judicial documents, and that's not a point that was carried forward by the Department on appeal because even assuming these are judicial records, unsealing them doesn't meet the test under the First Amendment or the common law. And just briefly, I want to switch to the second step of the First Amendment test, if the court finds that there is one. And that question is whether there is a less restrictive means to present the information. So in this case, the district court requested additional briefing as to whether or not additional redactions of the documents could protect the government's interest while still vindicating any First Amendment or common law interest that the other parties had. And the district court, after considering the documents and the reasons why additional redactions would not protect that interest, determined that there was no least restrictive means other than sealing the documents in this case. And I would submit to the court that that decision was not an abuse of discretion, that the district court did not otherwise abuse its discretion in finding that Mr. Flint's motion to unseal should be denied under the First Amendment or rather under the common law, and that the district court did not abuse its discretion when it made the First Amendment-backed findings. And so unless there are further questions, I would yield my time back to the court. Thank you. Thank you. Yes. The records at issue here describe the execution process used in Missouri and describe the reason why it's used. They do much more than reveal the identity. Although I haven't seen them, of course, my understanding is that they use a code name and don't even reveal the identity of the anesthesiologist. But even if the anesthesiologist's identity was revealed, that wouldn't stop the death penalty in Missouri because this court in Taylor said that an anesthesiologist is not necessary to carry out the death penalty. Several circuit courts. You're not quibbling with that decision, is that right? That's the precedent in the circuit, not quibbling with it at all. The other circuits have said that it's a more rigorous First Amendment analysis. That's not something that we're making up. In Ray Providence's journal, Richmond Against New Yorker Magazine, the Second and First Circuits have talked about that. And it really is the narrow tailoring, I think, what this case comes down to. I don't have any doubt that parts of these exhibits should be sealed. The question is how much and why. And the court made that determination on the basis of an ex parte submission by the state that we have no idea what it is. And if we're going to take judicial notice of things, I think we should also take judicial notice that traditionally in the death penalty area, when Missouri has been sued to have secret information come out, it's usually revealed time after time that there was something being covered up that was unsavory, including a physician who was incompetent, a nurse who was on criminal probation, how witnesses are selected for the death penalty in a way that ensured that everyone who said their reason for wanting to be a witness was to ensure the Constitution was followed were never selected, inventory records that showed that deliveries were made by mistake and the state refusing to return medications had caused a medical crisis. And this is all on the record on appeal? Talking about judicial notice. If you're going to take judicial notice, you should take judicial notice of the... We have to be able to find it. You can find that just as easily as you can find any evidence of guerrilla warfare. Therefore, we ask that this court... You can start with the St. Louis Post-Dispatch would be a good starting point for all those cases. You can also Westlaw, several of them are on Westlaw as well. We ask that the court reverse and remand for application of the proper standard to the decision of whether to seal unsealed portions of the record. Thank you, counsel. The case has been well briefed and argued, and we'll take it under advisement.